## *Union Insurance Company.
### v.
## Frank F. Cole.

1. Marine insurance.—As between the parties liable to contribute under the law of general average the expenses of paying and maintaining the crew while the ship is seeking the port where the repairs are to be made, and while necessarily in that port, are among the expenses for which such contribution may be enforced.

2. Limitation as to liability.—The right of the insured to indemnify is purely a matter of contract, and it is competent for the parties in making their contract to limit the liability assumed by the insurer in any respect they deem proper. As the policy in question expressly excepts from the liability assumed all claims for wages or provisions to officers or crew while the property insured is detained by any disaster, etc., such claim can not be allowed.

Appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding. Opinion filed March 8, 1886.

Messrs. Schuyler & Kremer, for appellant.

Mr. John C. Richberg, for appellee.

Bailey, P. J. ·This was a suit in assumpsit, brought by Frank F. Cole against the Union Insurance Company, of Philadelphia, upon two policies of marine insurance, one for $1,000 and the other for $3,000, upon the schooner J. B. Penfield, employed in the navigation of the waters of the great lakes. Said policies contained, among other things, the following provisions:

" Touching the adventures and perils which the said insurance company are content to bear and take upon themselves by this policy, they are of the lakes, rivers, canals, jettisons, that shall come to the damage of the said vessel or any part

* The case of Thames and Mersey Marine Insurance Co. v. Frank F. Cole, being in most of its features like the above, is reversed for the same reason.

thereof : Excepting all perils, losses or misfortunes, consequent upon and arising from or caused by the following or other legally excluded causes, viz.:  *  *  *  Any claim for wages or provisions furnished to officers or crew, while the property insured may be detained by any disaster, or during subsequent repairs; excepting always services rendered in protecting, recovering and securing the vessel or property covered by this policy.

"In all cases of loss or damage, one third new for old shall be deducted from the amount of actual cost of repairs, or estimate for same (except on anchors), and no partial loss, or particular average shall in any case be paid by the insurers, unless its amount of the whole of such damage or loss (after deducting one third new for old) equals or exceeds eight per cent. of the valuation aforesaid. Each passage from port to port shall be subject to its own separate average.

"It is also agreed and understood, that in case of loss or damage under this policy, the assured, in claiming and accepting payment therefor, hereby and by that act, assigns and transfers all his or their right to claim for such loss or damage as against any person or persons to this company to inure to its benefit ; however to that extent only of the amount of the loss or damage and attendant expenses of recovery, paid or incurred by this company. And any act of the assured waiving or transferring or tending to defeat or decrease any such claim against any person or persons shall be a cancellation of the liability of this company for or on account of the loss or damage claimed, and the expense of recovery or otherwise (if any), paid or incurred by the said company, shall be a lien upon and shall be recoverable against the said vessel, tackle, apparel and other furniture, or any part thereof, or against the insured at the option of the insurer."

The vessel insured, with its tackle, apparel, etc., was valued in the policies at $9,333. The total amount of insurance permitted was $7,000, and the evidence shows that the plaintiff held another policy concurrent with those in suit, issued to him by the Thames and Mersey Marine Insurance Company, for $3,000.

On the 13th day of June, 1883, said schooner, while navi‑gating Lake Michigan, at a point about 120 miles northeast of Milwaukee, and being light, was injured by a collision with the schooner David Vance, then in tow of the steamer Siberia. She was thereupon towed by the Siberia to Milwaukee, where, after being detained some twelve days for repairs, she resumed her voyage. The total loss to the owner occasioned by the collision, as claimed by the plaintiff, was $1,348.28, of which $820 was a general average loss, and $528.28 a partial loss or particular average. It is admitted that the particular average was less than eight per cent. of the valuation of the vessel in‑sured as fixed by said policies, and therefore, by the terms of the policies, not recoverable. The general average claimed consisted, among other items, of a charge of $450 by the steamer Siberia for towing the vessel insured, from the place of collision to off the port of Milwaukee, and the master's ac‑count for wages and provisions of himself and crew from the time of the collision to the date of resuming the voyage, seven men for twelve days, amounting to $246.

On the 23d day of August, 1883, said vessel, while navi‑gating Georgian Bay laden with a cargo of 21,669 bushels of corn consigned to Coon & Knowles, at Midland, a port on Georgian Bay, was stranded within eight miles of her destina‑tion. She was lightered and her cargo saved with the loss of only 244 bushels. She was then gotten off and taken to the port of Collingwood for repairs. The loss by this disaster, as is claimed, amounted to $2,924.20, of which $1,818.37 was a general average loss, $1,105 a particular average. This gen‑eral average contains an item of $43 for wages of master and crew from time the vessel was stranded until it was released, two days, and one of $205.75, for the wages of master and crew on repairs, nine days. At the trial the court, among other instructions, gave to the jury, at the instance of the plaintiff, the following :

" The jury are instructed, as a matter of law, that expenses of wages and provisions of crew during and on repair in a port of necessity are recoverable by ship owner from underwriters (provided, with other proper charges on repair, the total

amounts to the percentage specified in the policy of insurance) in accordance with the limitations and stipulation therein contained, and among such proper charges as made in the adjustment of the loss on the voyage of August 18, 1883, as noted for a partial loss, are those of C. G. Barth for his expense account, as agent of the owner, actually paid on account of said disaster, provided such expenses were necessary, and the proportionate charge of $22.50 for expense of survey."

The jury found the issues for the plaintiff and assessed his damages at $1,170.20, a result which could only be reached by allowing in full said charges for the wages and provisions of the master and crew during the time the vessel was being repaired, and also the charge of the steamer Siberia for towing the vessel from the place of collision.

It seems to be settled in this country that, as between the parties liable to contribute under the law of general average, the expenses of paying and maintaining the crew while the ship is seeking the port where the repairs are to be made and while necessarily in that port, are among the expenses for which such contribution may be enforced. 2 Parsons on Insurance, 257. And it should perhaps be held that the liability of an insurer, in the absence of any express limitation in that behalf, also covers expenses of that character. It should be remembered, however, that the right of the insured to indemnity is purely a matter of contract, and that it is competent for the parties, in making their contract, to limit the liability assumed by the insurer in any respect they deem proper. The present policy contains a limitation in this very respect. It expressly excepts from the liability assumed all claims for wages or provisions furnished to officers or crew, while the property insured is detained by any disaster, or during subsequent repairs, save only where the services are rendered in protecting, recovering and securing said property. This provision seems to us to be very plain, and under it a very considerable portion of the accounts for the wages and provisions of the crew which the jury have allowed are clearly excluded.

We are also inclined to the opinion that, under the evidence as it appears in this record, the item of $450, charged by the

Union Ins. Co. v. Cole.

owner of the steamer Siberia for towage, was improperly allowed.   The evidence seems to show not only that the plaintiff has not paid that item but also that he will never be called upon to pay it.   After the collision with the schooner in tow of the Siberia it was claimed by the plaintiff that the Siberia was at fault, and that Davidson, the owner of the Siberia, was liable to him for the damages thereby caused to his vessel. Under these circumstances Davidson, in order to save himself all controversy and trouble, proposed to the plaintiff to cancel his charge for towage in settlement of the plaintiff's claim for damages, and the evidence seems to show that the plaintiff, through his attorney, subsequently made a settlement with Davidson on that basis.

It is now admitted, at least by the counsel for the plaintiff, and the evidence seems to show, that the collision was an inevitable accident, for which neither party was to blame, and that, consequently, as between the colliding vessels, the loss should fall on the party which suffered it.   If this is true, the plaintiff had no claim for damages against Davidson, and has surrendered and paid nothing in satisfaction of Davidson's charge for towage, and we see no ground upon which he can  include that charge as an element of the damages recoverable under insurance policies.

But if he had a valid claim against Davidson for damages and has compromised and surrendered it, it is difficult to see how he can recover at all under the conditions of his policies, at least so far as the loss by said collision is concerned.   If Davidson was liable to the plaintiff at all as claimed, he would seem to be liable for the entire loss, but the plaintiff has seen fit to discharge him from his liability on satisfying only a small portion of the loss.   By the policies, the insurance company became entitled to the benefit of said claim for damages as an assignee of the plaintiff, and it was expressly provided in the policies that any act of the assured waiving or transferring or tending to defeat or decrease any such claim should be a cancellation of the liability of the insurer for or on account of the loss or damage claimed.

Various other questions are presented by counsel which we

do not deem it necessary for us to consider, but for the reasons above given the judgment will be reversed and the cause remanded.

Judgment reversed.